# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CLARENCE J. ROBINSON,** : | |
| Petitioner : | |
| : | CIVIL NO. 3:CV-16-0349 |
| v. : | |
| : | (Judge Caputo) |
| **WARDEN,** : | |
| Respondent : | |

# M E M O R A N D U M

## I.  Introduction

Presently before the Court is a petition for writ of habeas corpus (ECF No. 1) filed pursuant to 28 U.S.C. § 2241 by Petitioner, Clarence J. Robinson, a federal inmate incarcerated at the Canaan United States Penitentiary (USP-Canaan), in Waymart, Pennsylvania.  Mr. Robinson contends his due process rights were violated at his prison disciplinary hearing where he was found guilty of possession of weapon.  Following the hearing, the Disciplinary Hearing Officer (DHO) imposed several sanctions, *inter alia*, the loss of good conduct time (GCT).  He also claims the loss of personal property without due process following the search of his cell.  As relief, Mr. Robinson seeks the expungement of the disciplinary matter from his record, the restoration of his GCT, and the return of his personal property.  The Bureau of Prisons (BOP) argues that because Mr. Robinson failed to properly exhaust his administrative remedies prior to seeking judicial relief his Petition should be dismissed.  (ECF No. 12.)  In his Reply, Mr. Robinson argues that he exhausted his administrative remedies with respect to both his property and disciplinary claims to the

extent possible. He claims that all of his disciplinary appeals were continually and improperly rejected as untimely. (ECF No. 14.) Also pending before the Court are two motions for preliminary injunction based on Mr. Robinson's allegations of prison official's retaliation against him.

The Petition is ripe for disposition and, for the reasons that follow, will be dismissed. To the extent Mr. Robinson seeks to pursue claims of retaliation or the loss of personal property, these claims are not cognizable in habeas and must be pursued in a civil rights action. His motions for preliminary injunction will be dismissed without prejudice for him to pursue his retaliation claims in a civil action.

## II. Background

### A. Mr. Robinson's Disciplinary Proceedings

On August 23, 2015, following a search of Mr. Robinson's single occupancy cell, a weapon was found "hidden between the lower bed frame and the cell wall". (ECF No. 12-1, Incident Report 2752808, p. 26.) The flat metal weapon was approximately 6.5 inches long and pointed at one end. (*Id*.) Officer Whitehead authored the incident report charging Mr. Robinson with possession of a weapon, a violation of Code 104. (*Id*.)

A copy of the incident report was delivered to Mr. Robinson on August 23, 2015. Mr. Robinson was advised of his right to remain silent during the investigation of the incident report. (*Id.*, p. 27.) Mr. Robinson indicated that he understood his rights. When asked about

the weapon, Mr. Robinson stated, "Yeah, it was mine." (*Id*., p. 27.) Due to the severity of the charge, the matter was forwarded to the Unit Disciplinary Committee (UDC). (*Id*.)

Mr. Robinson appeared before the UDC on August 24, 2015. (*Id*., p. 26.) Mr. Robinson did not comment on the incident at the UDC hearing. (*Id*.) The same day, staff notified Mr. Robinson of the referral and gave him a copy of the Inmate Rights at Discipline Hearing. (*Id*., pp. 29 - 30.) Mr. Robinson was apprised that he had the right: (1) to have a written copy of the charges against him at least 24 hours prior to appearing before the DHO; (2) to have a full-time staff member to represent him before the DHO; (3) to call witnesses (or present written statements of unavailable witnesses) and to present documentary evidence on his behalf; (4) the right to remain silent or present a statement; (5) to be present during the disciplinary hearing except during deliberation or when institutional safety would be jeopardized; (6) to be advised of the DHO's decision and the facts supporting that decision except where institutional safety would be jeopardized; and (7) to appeal the decision of the DHO within 20 calendar days of notice of the DHO's decision. (*Id*.) Mr. Robinson refused to sign the acknowledgment form indicating he was advised of these rights. (*Id*., p. 30.) He also indicated he did not want a staff representative or witnesses at his DHO hearing but refused to sign the Notice of Disciplinary Hearing form before the DHO. (*Id*., p. 31.)

Mr. Robinson's DHO hearing as to Incident Report 2752808 was initially scheduled for September 3, 2015. (*Id*., p. 38.) However after Mr. Robinson advised the DHO he had not received a copy of the incident report, the DHO offered Petitioner the option of waiving 24 hours notice and proceed with the hearing or postponing the hearing for another day. Mr.

-3-

Robinson elected to postpone the hearing. He was then given a copy of the incident report. (*Id*., pp. 26 and 38.)

The disciplinary hearing reconvened on September 8, 2015. The DHO advised Mr. Robinson of his rights at the hearing. Mr. Robinson indicated he understood and waived his right to staff representation and his right to present witness testimony. (*Id*.) At the September 8, 2015, DHO hearing, Mr. Robinson "elected not to make statement which was specific to the charge." (*Id*., p. 38.) He also did not request or present any witnesses or documentary evidence at the hearing. (*Id*.) The DHO considered the report of the eye witness who discovered the weapon during the search of Mr. Robinson's cell. (*Id*., p. 39.) The photographs (*Id*., p. 28) of the 6.5 inch pointed piece of metal found concealed in Mr. Robinson's cell between the bedframe in the corner of the cell were also relied upon. (*Id*., p. 39.) After consideration of all the evidence, the DHO concluded that, based on "some facts," Mr. Robinson did commit the "prohibited act of possession, manufacture or introduction of a gun, weapon, sharpened instrument, knife, dangerous chemical, explosive or any ammunition (Code 104)". (*Id*., p. 39.) As a sanction, in addition to the loss of commissary, telephone and visiting privileges for an eighteen month period, Mr. Robinson was given sixty days in disciplinary segregation and the loss of forty days of good conduct time. (*Id*., p. 40.) Mr. Robinson was advised of the DHO's findings, the specific evidence relied upon, sanctions and the reasons for the sanctions. Mr. Robinson was given notice of his right to appeal the DHO's findings within twenty calendar days of his receipt of the DHO's report. (*Id.*)

The DHO issued his report on September 8, 2015, the same day it was delivered to Mr. Robinson. (*Id*.)

### B. The BOP's Administrative Remedy Process

The BOP has a multi-tiered Administrative Remedy Program for a prisoner to seek formal review of any aspect of his imprisonment. (ECF No. 12-1, Figgsganter Decl., pp. 3 - 4, citing 28 C.F.R. § 542 *et seq.*) The BOP's Administrative Remedy Program requires an inmate to first informally present his complaint to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for administrative relief. 28 C.F.R. § 542.13(a). If unsuccessful at informal resolution, the inmate may raise his complaint with the Warden of the institution where he is confined. *Id*., at § 542.14(a). If dissatisfied with the response, he may then appeal an adverse decision to the Regional Office and the Central Office of the BOP. *Id*., at §§ 542.15(a) and 542.18. No administrative appeal is considered exhausted until a decision is reached on the merits by the BOP's Central Office.

With respect to disciplinary hearing decision appeals, a BOP inmate can initiate the first stop of the administrative review process by filing a direct written appeal (thus bypassing the institutional level review) to the BOP's Regional Director within twenty calendar days of the DHO's decision. 28 C.F.R. § 542.14(d)(2) and § 542.15(a). Following the Regional Director's denial, the inmate may file an appeal to the General Counsel in the BOP's Central Office within thirty calendar days of the date of the Regional Director's response. 28 C.F.R. §

542.15(a). The Regional Director has thirty calendar days to respond and the General Counsel (Central Office) has forty calendar days to respond. 28 C.F.R. § 542.18.

The deadlines contained within this process may be extended upon request by the inmate and a showing of a valid reason for delay. *See* 28 C.F.R. § 542.15(a); 28 C.F.R. § 542.14(b). No administrative remedy appeal is considered to have been fully and finally exhausted until it has been denied by the BOP's Central Office. (*Id*.)

When the BOP rejects an administrative remedy, the submission is returned to the inmate. The BOP does not retain a copy of rejected filings. 28 C.F.R. § 542.17.

### C. Mr. Robinson's Administrative Remedy Efforts

On October 5, 2015, Mr. Robinson filed an appeal of the DHO's decision regarding incident report number 2752808. (ECF No. 12-1, p. 23.) The Regional Office rejected Mr. Robinson's appeal as untimely, noting that his appeal "was due at the Regional Office by 09-28-2015," but was not received until October 5, 2015. (*Id*.) Mr. Robinson claims the date he received the Hearing Examiner's report was inaccurate. (ECF No. 1, p. 5.) He gave it to his Counselor to correct, "he agreed and signed the denial slip." (*Id*.) Petitioner then resubmitted his appeal to the Regional Office. (*Id*.; *see also* ECF No. 12-1, p. 23.) The Regional Office again rejected Mr. Robinson's appeal because he failed to provide staff verification explaining why his appeal was filed in an untimely manner. *Id*. ("You did not submit a staff memo to explain your late filing.") Mr. Robinson then returned to his Counselor for assistance. (ECF No. 1, p. 6.) The counselor advised him he would provide him with a memo. (*Id*.) "A week

-6-

later [Mr. Robinson] saw [his] paperwork on his [Counselor's] desk without any action being taken and [Petitioner] took it back ... and sent an appeal to the Central Office." (*Id.*)  On December 30, 2015, Mr. Robinson filed an administrative remedy appeal with the Central Office. (ECF No. 12-1, p. 24.)  On January 21, 2015, the appeal was rejected and Petitioner was instructed to "follow Regional [Office's] directions" and resubmit his appeal with a staff memorandum explaining the delay to the Regional Office. (*Id.*)  No further appeals concerning incident report number 2752808 were filed. (*Id.*, pp. 8 - 25.)

### III. Standard of Review

A challenge to a disciplinary action that resulted in the loss of good time credit is actionable under § 2241 because it affects the duration of the Petitioner's sentence. *Queen v. Miner*, 530 F.3d 253, 254 n.2 (3d Cir. 2008).

### IV. Discussion

#### A. Mr. Robinson's Property and Retaliation Claims are not Cognizable in Habeas

Mr. Robinson's retaliation and loss of property claims are not cognizable in this § 2241 petition.  ""[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484, 93 S.Ct. 1827, 1833, 36 L.Ed.2d 439 (1973). Thus, Petitioner's challenge related to the alleged deprivation of his good conduct credits is properly brought under § 2241 because it affects the length of his confinement. Id.

at 487. However, a ruling on Petitioner's retaliation and property claims would not affect the duration of his confinement and are not properly considered in a § 2241 action.

### B. Mr. Robinson Failed to Exhaust his Administrative Remedies related to Incident Report No. 2752808.

"Federal prisoners are ordinarily required to exhaust their administrative remedies before petitioning for a writ of habeas corpus pursuant to § 2241." *Moscato v. Federal Bureau of Prisons,* 98 F.3d 757, 760 (3d Cir. 1996). *See also Vasquez v. Strada*, 684 F.3d 431, 433 (3d Cir. 2012). Accordingly, before the Court can reach the merits of the Petition, the court must address Respondent's exhaustion argument.

"[F]ailure to satisfy the procedural rules of the [Bureau of Prisons'] administrative process constitutes procedural default." *Moscato*, 98 F.3d at 760 - 61. "If a petitioner failed to exhaust his administrative remedies due to a procedural default, and the default renders the administrative process unavailable to him, review of his § 2241 is barred unless he can show cause and prejudice." *Speight v. Minor*, 245 F. App'x 213 (3d Cir. 2007) (per curiam) (citing *Moscato*, 98 F.3d at 761.)

As Respondent points out, Mr. Robinson failed to properly exhaust his administrative remedies by filing an untimely appeal to the Regional Office. Additionally, although Respondents dispute that Mr. Robinson did not receive the DHO's written report on September 8, 2015, both the Regional and Central Offices advised Mr. Robinson that submission of a staff memorandum explaining why his appeal was untimely filed, would be considered in determining whether his appeal was untimely. Mr. Robinson requested

-8-

assistance of his Counselor in this matter. His Counselor indicated he would assist him, but after "a week," Mr. Robinson retrieved his paperwork from his Counselor's desk and resubmitted his appeal. Again the Regional Office and then the Central Office told him he could resubmit his appeal if he provided the supporting staff memo. Mr. Robinson never perfected his appeal of the incident report.

In his Reply, Mr. Robinson suggest that he has fully exhausted his administrative remedies within his power but does not explain why after waiting a week he took his papers back from his Counselor who said he would assist Petitioner. Moreover, when Mr. Robinson again appealed to the Regional and Central office, he was given two additional opportunities to supply the staff memorandum as to why his untimeliness of his appeal was not his fault. Taking his papers away from his Counselor prior to receiving the staff memorandum is not staff's failure to assist him, rather it is a reflection of Mr. Robinson's impatience. Mr. Robinson's admitted choice to retrieve his papers from his Counselor's desk prior to receiving a response does not demonstrate cause and prejudice for his procedural default.

**V.     Conclusion**

Mr. Robinson was required and failed to exhaust his administrative remedies with respect to incident number 2752808. Accordingly, the Court cannot reach the merits of his Petition. Additionally, Petitioner's motions for preliminary injunction based on alleged retaliation will be denied based on the Court's dismissal of the Petition. Mr. Robinson may,

however, file a separate action to raise his claims of retaliation and challenge his loss of property while housed in the SHU.

An appropriate Order follows.

                                              **/s/ A. Richard Caputo**
                                              **A. RICHARD CAPUTO**
                                              **United States District Judge**

**Date:  August 10, 2017**